**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AQUAVIT PHARMACEUTICALS, INC., ) | CASE NO. 1:19-cv-03351 (VEC) |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | |
| ) | |
| U-BIO MED, INC., ) | |
| GLOBAL MEDI PRODUCTS, and ) | |
| NYUN SHI EUM aka NYEON-SIK EUM ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE TO FIND DEFENDANTS IN CONTEMPT

## <u>TABLE OF CONTENTS</u>

I.   FACTS ....................................................................................................................... 1

   A.   Defendants Have Had Actual Knowledge of the Terms of the TRO Since April 17, 2019, and of the Terms of the PI Order Since April 30, 2019. .......................................... 1

   B.   Terms of the PI Order. ...................................................................................... 4

II.   Defendants' Direct Violations of the TRO and PI Order. ............................................. 6

   A.   Defendants Continue to Advertise on and Sell Counterfeit Products Through Their Websites Using Plaintiff's Marks, Copies of Plaintiff's Marks and/or Confusingly Similar Marks. ....................................................................................................... 6

   B.   Defendants Continue to Post on Their Social Media Channels Using Plaintiff's Marks, Copies of Plaintiff's Marks and Confusingly Similar Marks. .................................... 8

   C.   Defendants Contacted Plaintiff's Distributor in Violation of the Court's Orders. ............ 11

   D.   Defendants Transferred Assets Out of Their PayPal Account in Violation of the Court's Orders. ......................................................................................................... 11

   E.   Defendants Continue to Sell Counterfeit Products, Including Products Accompanied By Marketing Materials Using Plaintiff's Marks, in the United States and Elsewhere. ................. 12

   F.   Defendants Also Failed to Provide the Information Required Under the Court's Order's. 13

III.   ARGUMENT ....................................................................................................... 14

   A.   Defendants Are In Contempt. ............................................................................ 14

   B.   Defendants Should Be Sanctioned. .................................................................... 15

CONCLUSION ......................................................................................................... 17

## TABLE OF AUTHORITIES

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
2002 U.S. Dist. LEXIS 16323 (S.D.N.Y. Sept. 3, 2002) ............................................... 16

*EEOC v. Local 638,* 753 F.2d 1172 (2d Cir. 1985) ...................................................... 14

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1 (2d Cir. 1989) ........................ 15

*Shady Records, Inc. v. Source Enterprises, Inc.*, 351 F. Supp. 2d 64 (S.D.N.Y. 2004) .......... 15-16

*Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979) ........................ 15, 16-17

*Weitzman v. Stein,* 98 F.3d 717 (2d Cir. 1996) ................................................... 15, 16

Pursuant to Fed. R. Civ. P. 37, Plaintiff Aquavit Pharmaceuticals, Inc. ("Plaintiff" or "Aquavit"), through its counsel, FisherBroyles LLP, submits this memorandum of law in support of its Order to Show Cause why Defendants U-Bio Med, Inc. ("U-Bio Med") and Nyun Shi Eum a/k/a Nyeon-Sik Eum ("Eum") (collectively, "Defendants")[1] should not be held in contempt. Contempt sanctions are appropriate for Defendants' repeated, willful, and ongoing violations of this Court's April 15, 2019 Temporary Restraining Order [DE 3] ("TRO") and April 29, 2019 Preliminary Injunction Order [DE 19] ("PI Order").

## I.  FACTS

### A.  Defendants Have Had Actual Knowledge of the Terms of the TRO Since April 17, 2019, and of the Terms of the PI Order Since April 30, 2019.

This action was commenced by Verified Complaint [DE 1], which was filed at the same time as an Order to Show Cause on April 15, 2019 [DE 3].  On April 15, 2019, this Court entered the TRO in conjunction with issuing the Order to Show Cause.  In accordance with the Court's Order, the Order to Show Cause and TRO were served by email including a link to Plaintiff's counsel's secure document management system, NetDocuments (the "ShareSpace").  The ShareSpace contained the Order to Show Cause, TRO, and all other documents that Plaintiff filed to commence this case.  The ShareSpace History Log [DE 9-2] shows (i) that Defendants were served with a link to the ShareSpace and that the ShareSpace contained the documents required by the Order; and (ii) that Defendants actually accessed the documents in the ShareSpace on April 17, 2019.  In addition, Defendants were served by Federal Express and received the hard copies of the documents on April 23, 2019.  Thus, as of April 17, 2019, Defendants had actual knowledge of this case, the Order to Show Cause, and the TRO.

---

[1] Defendant Global Medi Products has not appeared through counsel and is in default.

On April 18, 2019, Defendant Eum, the CEO of Defendant U-Bio Med, emailed Plaintiff's counsel from the ubiomed@daum.net email account and confirmed receipt of the email with link to the Order to Show Cause and TRO.  [DE 9-6].

On April 19, 2019, following service of the Order to Show Cause and TRO, Defendant Eum posted on Defendants' Facebook page the statement:  "Unbelievable^^ Very very famous American law firm has blocked my facebook and instgram."  [DE 26-10].  This further evidences Defendants' knowledge of these proceedings.

On April 19, 2019, this Court held a hearing on Plaintiff's request for a preliminary injunction.  On April 29, 2019, this Court entered the PI Order.  On April 30, 2019, in accordance with the PI Order, counsel for Plaintiff served Defendants by electronic mail at the three email addresses previously used for service of the Order to Show Cause and TRO.  [DE 20-7; DE 22-7].  Thus, as of April 30, 2019, Defendants had actual knowledge of the PI Order.

As of at least May 3, 2019, if not earlier, U-Bio Med posted on its website a "notice" that stated that it was "[f]und [r]aising for US lawsuit of Aquagold."  [DE 26 ¶ 12; DE 26-9 at 10; Declaration of Christina Bost Seaton dated May 23, 2019 ("Bost Seaton Decl.") Exhibit 1].  In that "notice," Defendants used Plaintiff's trademarks.  To this day, that same infringing "notice" appears on the ubiomed.co.kr website, along with all other of the same infringing uses of Plaintiff's trademarks.  *See* Bost Seaton Decl. Exhibit 1 at 10.

On May 9, 2019, Plaintiff filed a Declaration in support of its request for Certificates of Default, in which Plaintiff specifically identified multiple ways in which Defendants were directly violating the terms of the Court's TRO and PI, including on their ubiomed.co.kr and tappy.co.kr websites, through their Facebook page, and by Eum contacting and threatening Plaintiff's distributor in Romania.  [DE 26 ¶¶ 12, 14-16, 18; DE 26-9; DE 26-10].

On May 10, 2019, counsel for Defendants appeared in this case.  On May 17, 2019, counsel

for all parties came before the Court and discussed specifically the terms of the PI Order.

### A. Terms of the TRO.

In the Court's TRO, Defendants specifically were enjoined in Section II.A.:

1. from manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products[2], or any other products bearing Plaintiff's Marks[3] and/or marks that are confusingly similar to, identical to and constitute a counterfeiting and/or infringement of Plaintiff's Mark;

2. from secreting, concealing, destroying, altering, selling off, transferring, or otherwise disposing of and/or dealing with:  (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to the Storefronts[4], Defendants' Assets[5], and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products;

3. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets or Defendants' Financial Accounts[6] until further ordered by this Court;

4. from effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, account, Storefront, or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products for the purpose of circumventing

---

[2] "Counterfeit Products" was defined as those using "Plaintiff's Marks, or any other marks that are confusingly or substantially similar to Plaintiff's Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in goods or services bearing Plaintiff's Marks or purporting to be a "private label" version of Plaintiff's goods or services."  TRO at Section I.A.2.

[3] "Plaintiff's Marks" was defined as "AQUAGOLD, FINE TOUCH, MICROCHANNEL TECHNOLOGY, and AQUAVIT PHARMACEUTICALS."  TRO at Section I.A.1.

[4] "Defendants' Storefronts" was defined as "Defendants' website (http://ubiomed.co.kr), social media pages, or other online points of advertising or sale for Defendants' Counterfeit Products."  TRO at Section I.A.9.

[5] "Defendants' Assets" was defined as "any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad)."  TRO at Section I.A.10.

[6] "Defendants' Financial Accounts" was defined as "accounts associated with or utilized by any Defendant or any of Defendants' Storefronts (whether said account is located in the U.S. or abroad)."  TRO at Section I.A.10.

or otherwise avoiding the prohibitions set forth in this Order;

5. from, within five (5) days after receiving actual notice of this Order, providing services to Defendants and Defendants' Storefronts, including, without limitation, continued operation of Defendants' Storefronts;

6. from knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in this Section II; and

7. from communicating, directly or indirectly, with Plaintiff's customers, distributors and/or business partners.

TRO at Section II.A.

In addition, within fourteen (14) days after receiving notice of the Order to Show Cause – *i.e.*, by May 1 (14 days from receipt of the email with the link to the documents that Defendants in fact accessed) or, at the latest, May 7 (14 days from receipt of the Fed Ex) – each Defendant was required to:

> [S]erve upon Plaintiff's counsel a written report under oath providing: (1) their true name and physical address; (2) the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all Storefronts on any Third Party Service Provider platform that Defendants own and/or operate; (3) the complete sales records for any and all sales of Counterfeit Products, including number of units sold, the price per unit, total gross revenues received (in U.S. dollars), and the dates thereof; (4) the account details for any and all of Defendants' Financial Accounts, including the account numbers and current account balances; and (5) the steps taken by each Defendant, or other person served, to comply with [the TRO/Order to Show Cause].

TRO at Section IX.A.

**B.  Terms of the PI Order.**

On April 29, 2019, this Court entered the PI Order.  First, the PI Order specifically, clearly and unequivocally stated that the "injunctive relief previously granted in the April 15, 2019 Order [*i.e.*, the TRO] should remain in place through the pendency of this litigation."  PI Order at Section 1 (p. 6).

Second, the PI Order specifically, clearly and unequivocally prohibited Defendants:

1. from using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Marks or other rights (whether now in existence or hereafter created) including, without limitation, Plaintiff's Marks, to identify any goods or services not authorized by Plaintiff; [PI Order Section 1.A.; *see also* Section 1.C., 1.E.]

2. from using any of Plaintiff's Marks or other rights (whether now in existence or hereafter created) including, without limitation, Plaintiff's Marks, or any other marks that are confusingly or substantially similar to Plaintiff's Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products; [PI Order Section 1.B.]

3. from using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiff; [PI Order Section 1.D.]

4. from reproducing, counterfeiting, copying, or colorably imitating Plaintiff's registered trademarks (AQUAGOLD and MICROCHANNEL TECHNOLOGY) and applying such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services; [PI Order Section 1.F.]

5. from using in commerce, on or in connection with any goods or services, or any container for goods, any of Plaintiff's Marks, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, concerning Plaintiff or Plaintiff's Authentic AQUAGOLD Device, and any commercial advertising or promotion misrepresenting the nature, characteristics, qualities, or geographic origin of Plaintiff's or Defendants' goods or services; [PI Order Section 1.G.]

6. from manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in any Counterfeit Products, or applying to, or accompanying, any of Defendants' goods or services with packaging, advertising, instructional, or other materials bearing Plaintiff's Marks, Plaintiff's FDA registration numbers, and/or Plaintiff's product codes (including AQT-001 and other AQT codes); [PI Order Section 1.H.]

7. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to accounts associated with or utilized by any Defendant or any of Defendants' Storefronts

(whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"); [PI Order Section 1.J]

8. from knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in this Section 1.  [PI Order Section 1.O.].

PI Order at Section 1.  Additionally, the PI Order required Defendants to provide the same information in a summary report under oath as called for in the TRO by May 15 (14 days from notice of the PI Order).  PI Order Section 3.A.

## II.  Defendants' Direct Violations of the TRO and PI Order.

As this Court stated to Defendants' counsel at the May 17, 2019, hearing, the text of the PI Order is clear.  Bost Seaton Decl. Exhibit 14 (Hrg. Trans. (May 17, 2019) at 13:24-14-2).  Nonetheless, in direct defiance of this Court's TRO and PI Order (collectively, the Court's "Orders"), Defendants continue to violate those Orders.  In fact, Defendants literally have done nothing to comply with the Court's Orders; rather, they continue knowingly to violate the Orders, including well after they retained counsel.

### A.  Defendants Continue to Advertise on and Sell Counterfeit Products Through Their Websites Using Plaintiff's Marks, Copies of Plaintiff's Marks and/or Confusingly Similar Marks.

As shown in Plaintiff's Complaint exhibits and exhibits in support of the Order to Show Cause, Defendants have been advertising, promoting, marketing, selling, and offering products for sale on their websites – ubiomed.co.kr and tappy.co.kr – using Plaintiff's Marks, copies of Plaintiff's Marks and/or confusingly similar marks.  *Since the time of the TRO and PI Order, this has not stopped*.

Defendants' conduct on their websites violates at least Sections II.A.1. and II.A.6. of the TRO, and Sections 1.A. through 1.H. and 1.L. and 1.O. of the PI Order.  In fact, Defendants willfully have flouted the Orders by advertising on their websites and social media using Plaintiff's Marks *to "raise funds" for this lawsuit through sales of Defendants' Counterfeit Products*.

6

Plaintiff's Marks, or copies or colorable imitations thereof, of confusingly similar marks *continue* to appear throughout Defendants' websites, and are used to advertise, promote, market, sell, and offer for sale infringing products.   Bost Seaton Decl. <u>Exhibit 1</u> (printouts from Defendants' ubiomed.co.kr website from May 3, 8, 13, 20, and 21, 2019)[7]; Bost Seaton Decl. <u>Exhibit 2</u> (printouts from Defendants' ubiomed.co.kr website "Products" page from May 13, 20, and 21, 2019)[8]; Bost Seaton Decl. <u>Exhibit 3</u> (printouts from Defendants' tappy.co.kr website from April 24, May 8, 13 and 20, 2019)[9].

Further, Defendants continue to use a replica of Plaintiff's trademark registered in Korea (Reg. No. 4011871070000 (June 28, 2016)), which is shown below.   Defendants' social media advertising (further addressed in Section B below) makes multiple uses of the following image, which also embodies Plaintiff's U.S. trademarks in AQUAGOLD and FINE TOUCH:

---

[7] Exhibit 1 pages 10-11 show the most recent printout of these pages with the uses of Plaintiff's Marks highlighted.

[8] Exhibit 2 pages 28-40 show the most recent printout of these pages with the uses of Plaintiff's Marks highlighted.

[9] Exhibit 3 pages 21-27 show the most recent printout of these pages with the uses of Plaintiff's Marks highlighted.



*See* Bost Seaton Decl. <u>Exhibit 4</u> at p.2; <u>Exhibit 7</u> at p.4; <u>Exhibit 10</u> at p.5. Accordingly, any claims by Defendants that they are not using Plaintiff's Marks or its registered image are meritless.

**B. <u>Defendants Continue to Post on Their Social Media Channels Using Plaintiff's Marks, Copies of Plaintiff's Marks and Confusingly Similar Marks.</u>**

In direct violation of the TRO and PI, Defendants continue to advertise, promote, market and offer for sale infringing products using Plaintiff's Marks on their social media channels. Defendants' conduct on their social media channels violates at least Sections II.A.1. and II.A.6. of the TRO, and Sections 1.A. through 1.H. and 1.L. and 1.O. of the PI Order.

On Facebook, Defendants established a new page on April 11, 2019 – https://www.facebook.com/corea.eum – following the earlier takedown of their previously infringing Facebook page. On May 11, 2019, Defendants posted on Facebook the video at https://www.facebook.com/corea.eum/videos/123079835550792/ in which at least three instances

of Plaintiff's Marks appear.  Bost Seaton Decl. <u>Exhibit 4</u> (screen shots from video posting).  The screen shots show Defendants using AQUAGOLD FINE TOUCH, including specifically the image above, as well as Plaintiff's "AQT" product codes – "AQT" stands for Aquavit – as well as an image of Plaintiff's packaging (or a replica thereof) bearing its Marks.

Then, on May 21, 2019, Eum posted, along with his "fundraising notice":

Corea Eum is at Daegu, South Korea.
Yesterday at 11:47 PM ·

Left only 10 days.
**Feel Real Micro channel technology.**
**Tappy Tok-Tok is available in USA now**. @ Daegu, South Korea

Bost Seaton Decl. <u>Exhibit 5</u>.  Defendants thus use Plaintiff's MICROCHANNEL TECHNOLOGY trademark, and also continue to advertise sales of their infringing Tappy Tok-Tok device (which is accompanied by marketing materials using Plaintiff's Marks and images of Plaintiff's packaging) to the United States.

On Instagram, Defendants have at least two pages – at https://www.instagram.com/coreaeum/?hl=en and at https://www.instagram.com/ubiomed.korea/?hl=en.  Numerous infringing uses of Plaintiff's Marks appear on both pages.  Bost Seaton Decl. <u>Exhibit 6</u> (printouts from Defendants' "coreaeum" Instagram page from May 16 and May 21, 2019); Bost Seaton Decl. <u>Exhibit 7</u> (printouts from Defendants' "ubiomed.korea" Instagram page from May 21, 2019).  Therein, Defendants use Plaintiff's Marks, Plaintiff's Aquagold image, and Plaintiff's "AQT" product codes.

Perhaps most egregious – and in direct contravention of the claims made by Defendants to date about not using Plaintiff's Marks and not selling Counterfeit Products in the United States – on May 21, 2019, Defendants made a new posting on their "coreaeum" Instagram account that states:

> coreaeum Left only 10 days.
> **Feel Real Micro channel technology.**
> **Tappy Tok-Tok is available in USA now.**
> **#aquagold #aquagoldfinetouch**
> #tappytoktok #ubiomed
> #madeinkorea #microneedle
> #microchanneling #screw #thread

Bost Seaton Decl. <u>Exhibit 8</u>. Defendants thus (i) use Plaintiff's MICROCHANNEL

TECHNOLOGY trademark; (ii) continue to advertise sales of their infringing Tappy Tok-Tok

device (which is accompanied by marketing materials using Plaintiff's Marks and images of

Plaintiff's packaging) to the United States; (iii) make false claims regarding the origin, and false

and misleading representations of fact, concerning Aquagold; and (iv) intentionally seek to confuse

consumers as to the affiliation of U-Bio Med with Aquagold.

Even further, Defendants continue to offer for sale the Counterfeit Products to fuel their

defense of this lawsuit and in direct contravention of this Court's Orders, stating in a posting made

three weeks ago (thus after both of the Court's Orders) on their "ubiomed.korea" Instagram page:

> Fund Raising for
> US lawsuit of A Q U A G O L D
>
> ubiomed.korea
> **#aquagold #aquagoldfinetouch**
> **#aquavit** #tappytoktok #ubiomed
> #fundraising #uslawsuit #아쿠아골드
> #아쿠아골드파인터치 #태피톡톡 #유바이오메드
> #아쿠아빗[10]

Bost Seaton Decl. <u>Exhibit 9</u>.  Defendants use Plaintiff's Marks and, incredibly, *even hashtag*

*Aquavit*.

---

[10]  Google translate shows that the Korean text in the hashtags translates to:   #AquaGold #AquaGoldFineTouch #TappyTokTok #UBioMed #Aquavit.

Even worse, beneath that post, is a reply posting from three weeks ago from a company located in Orlando, Florida:

> foreverbeautylaserclinic
> **Are you real agua gold?**

To which Defendants replied:

> ubiomed.korea
> @foreverbeautylaserclinic**Yes. We are^^**

Bost Seaton Decl. <u>Exhibit 9.</u>

In addition, Plaintiff now has identified a third Instagram page (<u>https://www.instagram.com/regenaf.official/</u>) belonging to Defendants, on which appear infringing uses of Plaintiff's Marks, including in postings made since the TRO and PI Order were entered.  Bost Seaton Decl. <u>Exhibit 10.</u>

### C. <u>Defendants Contacted Plaintiff's Distributor in Violation of the Court's Orders.</u>

In violation of Section II.A.7. of the TRO, which was continued by the express terms of Section 1 of the PI Order, on or around May 9, 2019, Plaintiff's counsel was informed by Sobin Chang, CEO of Aquavit, that she was contacted by one of Plaintiff's distributors in Romania.  [DE 26 ¶ 18].  She was informed that Defendant Eum had contacted that distributor via WhatsApp.  *Id.*  Eum threatened the Romanian distributor for "supporting" Aquavit and, thus, Defendants continue tortuously to interfere with Aquavit's business relationships and also violate the Court's Orders.  *Id.*

### D. <u>Defendants Transferred Assets Out of Their PayPal Account in Violation of the Court's Orders.</u>

The Court's Orders prohibit Defendants from "secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets")

from or to accounts associated with or utilized by any Defendant or any of Defendants' Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts")."  TRO Section II.A.3; PI Order Section 1.J.

Defendants have on multiple occasions since the Orders withdrawn funds from the PayPal account.  Bost Seaton Decl. <u>Exhibit 12</u>.  On at least May 2, 2019, Defendants withdrew funds from their PayPal account, literally hours before PayPal froze the account, in violation of the Court's Orders.  Bost Seaton Decl. <u>Exhibit 12</u> & <u>Exhibit 13</u>.

### E.  <u>Defendants Continue to Sell Counterfeit Products, Including Products Accompanied By Marketing Materials Using Plaintiff's Marks, in the United States and Elsewhere.</u>

It appears that, in direct violation of the TRO Section II.A.1. and at least Sections 1.B., 1.D., 1.E., and 1.F. of the PI Order, Defendants have sold Counterfeit Products to at least one purchaser in the United States since the entry of both the Court's Orders.  Records of Defendants' PayPal transactions show that on May 1, 2019, Svetlana Bodneva, D.D.S. located in Fort Lee, New Jersey, purchased $564 in goods from Defendants.  Bost Seaton Decl. <u>Exhibit 11</u> (line 564).  The PayPal transaction log identifies the transaction as "successful"  *Id*. (column AR).

Dr. Bodneva states on her Instagram page (@sbodneva) that she performs "Facial and Dental Cosmetics."  On November 16, 2018, she posted that she was "so excited to add a new luxury treatment to her practice!...#aquagold."



The image posted by Dr. Bodneva is for AQUAGOLD, and it bears all of Plaintiff's Marks.  It is

a reasonable inference that Dr. Bodneva purchased Counterfeit Products from Defendants.

In addition, it is worth noting that, on April 22, 2019, Defendants sold, via their website,

"Aqua Gold 600S (0.60mm)" to a business in the United Arab Emirates (Bost Seaton Decl. Exhibit

11 (line 549, columns L, X, Z, and AI) and on April 26, 2019 Defendants sold "Tappy Tok-Tok,"

via its website, to "PQS Corp.," a business in British Columbia, Canada (Bost Seaton Decl. Exhibit

11 (line 554, columns L, X, Z, and AI)).

## F. **Defendants Also Failed to Provide the Information Required Under the Court's Order's.**

In violation of the Court's Orders (Section I.X.A and 3.A.), Defendants failed to provide

any of the information required to be produced within 14 days of each Order.  Notwithstanding

that Defendants were ordered to produce some of this information by May 22, 2019, and the

remainder at a date to be determined, Defendants were required to produce this information

pursuant to the TRO by May 1 (14 days from receipt of the email with the link to the documents that Defendants in fact accessed) or, at the latest, May 7 (14 days from receipt of the Fed Ex), and did not do so in violation of the TRO, nor by May 15 pursuant to PI Order.

Further, what Defendants did produce on May 22, 2019, was non-compliant.  Among other things, the disclosure:  (i) was not "under oath" as required by the Orders; (ii) did not provide an address for Defendant Eum; and (iii) provided only limited bank information (in Korean) and did not include the address of the financial institution, the services that are provided by the financial institution, the account numbers, and the current account balances, or <u>any</u> account information for Defendant Eum.  Bost Seaton Decl. <u>Exhibit 15</u>.

## III. <u>ARGUMENT</u>

### A. <u>Defendants Are In Contempt.</u>

The Court should find Defendants in contempt and impose sanctions if Plaintiff can show that:  (a) the order at issue is clear and unambiguous; (b) proof of non-compliance is clear and convincing; and (c) Defendants have not been reasonably diligent in complying with the order. *See EEOC v. Local 638,* 753 F.2d 1172, 1178 (2d Cir. 1985).

First, the Court's Orders could not be clearer.  They prevent Defendants from using Plaintiff's Marks on or in conjunction with the defined Counterfeit Products, or, quite simply in their advertising.  In addition, the Orders prohibit sales of Counterfeit Products, including products accompanied by marketing materials bearing Plaintiff's Marks.

Second, Defendants clearly are not complying with the Court's Orders.  Defendants have not complied with any aspect of the Court's Orders; rather they continue to advertise through their websites and social media using Plaintiff's Marks and images, as well as post on social media claims such as they are the "real Aquagold," as well as contacting and threatening Plaintiff's distributor, as well as transferring funds from identified accounts.  As shown above and in the

Exhibits, Defendants' willful conduct is knowing, intentional, and beyond egregious.  In fact, Defendants are "fundraising" for this case using Plaintiff's Marks and by selling infringing products.

Third, Defendants clearly have not been reasonably diligent in complying with the Court's Orders.  Defendants had actual knowledge of the Orders and literally have done nothing to comply; instead, they have continued to make numerous infringing postings since the Orders were entered.

**B.  Defendants Should Be Sanctioned.**

Civil contempt sanctions serve the dual purposes of coercing future compliance and of remedying past non-compliance.  *See Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir. 1996); *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).  While the Court has broad discretion in crafting an appropriate remedy, it must impose sanctions on a showing that the contemptuous conduct has caused harm to the plaintiff.  *See Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir. 1989); *Vuitton el Fils S.A.,* 592 F.2d at 130.

This Court already has determined that Defendants' unlawful use of Plaintiff's Marks is causing *irreparable* harm.  Nothing has changed.  Defendants continue to use Plaintiff's Marks, sell Counterfeit Products, including in the U.S., and continue to attempt to mislead the people as to Aquagold, Plaintiff's premier product.  Here, sanctions are appropriate both to coerce Defendants to comply with the Court's Orders and to remedy Defendants' shameless non-compliance.

*First*, in cases like this, it is appropriate to fine a defendant in an amount equivalent to the profits that Defendant has derived by violating the Court's order.  *See Manhattan Indus*., 885 F.2d at 5-6 (award of profits derived by contemnor is appropriate and is not punitive as it seeks to ensure full compensation to the injured party and does not interfere with the contemnor's unrelated assets); *Shady Records, Inc. v. Source Enterprises, Inc.*, 351 F. Supp. 2d 64, 66 (S.D.N.Y. 2004)

("Profits derived by the contemnor from violating the [preliminary injunction] order may be an equivalent or a substitute for legal damages, when damages have not been shown, and are recoverable not by way of punishment but to insure full compensation to the party injured."); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 2002 U.S. Dist. LEXIS 16323, at *35 (S.D.N.Y. Sept. 3, 2002) (awarding plaintiff compensatory fine equal to any profits made by defendant via activities in violation of the preliminary injunction).  Accordingly, Plaintiff requests the Court order disgorgement of Defendants' profits from all sales of Counterfeit Products – *i.e.*, sales of products labeled as "Aquagold" and sales of Tappy Tok-Tok or any other device accompanied by marketing materials using Plaintiff's Marks – since April 17, 2019, when Defendants became aware of the TRO.

*Second*, as compensation to Plaintiff and to coerce compliance, Plaintiff requests the following, which represent a fair measure of damages for the ongoing, direct, and intentional violations relating to advertising:  (i) $10,000 per infringing use of Plaintiff's Marks on Defendants' websites per day since April 17, 2019; (ii) $10,000 per infringing use of Plaintiff's Marks on Defendants' social media channels per day since April 17, 2019; (iii) $25,000 per infringing posting made since April 17, 2019, on Defendants' social media channels.

*Third*, Plaintiff requests monetary sanctions in an amount equivalent to the monies wrongfully withdrawn from Defendants' PayPal account since the entry of the Orders.

*Fourth*, Plaintiff requests an order requiring Defendants to remove all online references to any of Plaintiff's Marks, including the image on page 7 herein, and to any product code containing "AQT" and also from any and all marketing materials and packaging used by Defendants.

*Fifth*, a court should award attorneys' fees to the plaintiff where the contemnor's violation of the order has been willful.  *See Weitzman*, 98 F.3d at 719; *Vuitton*, 592 F.2d at 130 ("Since the

plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful."); SDNY L.Civ.R. 83.6.  Clearly, Defendants' violation of the Court's Orders is willful given their knowledge of the Orders – including that they did nothing to comply even after retaining counsel – and as evidenced, inter alia, by their "fundraising" for this suit using Plaintiff's Marks.

<u>**CONCLUSION**</u>

For the reasons set forth above and in the accompanying Declaration and Exhibits, Plaintiffs respectfully submit that an Order finding Defendants in contempt, sanctioning Defendants, and compelling it to comply with the Court's Order, is warranted.

Dated: May 24, 2019                              Respectfully submitted,

                                                 **FISHERBROYLES LLP**

                                                 <u>/s/ Christina H. Bost Seaton, Esq.</u>
                                                 Christina H. Bost Seaton
                                                 Anthony Onorato
                                                 445 Park Avenue, Ninth Floor
                                                 New York, New York 10012
                                                 (203) 887-4665
                                                 <u>christina.BostSeaton@fisherbroyles.com</u>
                                                 <u>tony.Onorato@fisherbroyles.com</u>

                                                 *Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AQUAVIT PHARMACEUTICALS, INC., | ) | CASE NO. 1:19-cv-03351 (VEC) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U-BIO MED, INC., | ) | |
| GLOBAL MEDI PRODUCTS, and | ) | |
| NYUN SHI EUM a/k/a NYEON-SIK EUM | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2019, I served the foregoing document, the accompanying Order to Show Cause, and the Declaration of Christina Bost Seaton with attached exhibits on counsel for Defendants U-Bio Med, Inc. and Nyun Shi Eum a/k/a Nyeon-Sike Eum by filing same through this Court's ECF system.

/s/ Christina H. Bost Seaton
Christina H. Bost Seaton