USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/19/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
AQUAVIT PHARMCEUTICALS, INC.,

                              Plaintiff,

              -against-

U-BIO MED, INC., GLOBAL MEDI PRODUCTS,
and NYUN SHI EUM aka NYON-SIK EUM,

                             Defendants.
------------------------------------------------------------------- X

19-CV-3351 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

In this trademark infringement action, Defendants U-Bio Med, Inc. and Nyun Shi Eum[1] ("Defendants") moved to dismiss the Complaint for lack of personal jurisdiction, claiming that a licensing agreement, which contains a forum selection clause and a consent to personal jurisdiction in New York, is unenforceable, and that Defendants' alleged infringing activity does not subject them to jurisdiction by way of New York's long-arm statute. Because the Court finds that the agreement is enforceable, the motion to dismiss is denied.

## I. BACKGROUND

On July 14, 2013, the parties entered into a licensing agreement that allowed Plaintiff, the licensee, to market and reproduce Defendants' injection device, which was allegedly patented and had medical or cosmetic applications. *See* Exclusive Worldwide Licensing Agreement ("EWLA") (Dkt. 1-1) at 1; Compl. (Dkt. 1) ¶ 2. Per the EWLA, Plaintiff must pay Defendants an annual royalty fee based on the number of devices sold, as set forth in a fee schedule. EWLA

---

[1]       Defendant Global Medi Products has not appeared in this action or otherwise responded to the Complaint.

(Dkt. 1-1) at 2.[2] Plaintiff has the option of fulfilling any sales orders by purchasing the devices from Defendants, at a price that guarantees Defendants a margin of 40%, or manufacturing the devices itself. EWLA (Dkt. 1-1) at 3. The EWLA also contains numerous other provisions, including non-compete and non-solicitation clauses binding on all parties until 24 months after the termination of the agreement. EWLA (Dkt. 1-1) at 4.

Starting in March 2014, Plaintiff began marketing the injection devices under the trade name AQUAGOLD. Compl. (Dkt. 1) ¶ 103. According to the Complaint, Plaintiff purchased the injection devices from Defendants until sometime in December 2014 or early 2015; Defendants' shipments were incomplete, unsanitary, or defective. *Id.* ¶¶ 111–12. By late 2014, Plaintiff allegedly learned that Defendants' manufacturing facilities were not certified, and that Defendants did not own the intellectual property behind the devices. *Id.* ¶¶ 110, 114. Plaintiff then found another manufacturing partner to produce the AQUAGOLD devices in certified facilities. *Id.* ¶ 115. Up to that point, Plaintiff had paid Defendants more than $200,000.[3] *Id.* at ¶ 112.

Since then, the relationship between the parties has significantly deteriorated. Defendants have allegedly attempted to convince actual and prospective customers that their device, marketed as Tappy Tok-Tok, is the functional equivalent of Plaintiff's AQUAGOLD device. *Id.* ¶¶ 121–24. In April 2016, Defendants sent a letter to three of Plaintiff's customers in New York City, claiming that Plaintiff had stolen the injection device's technology from

---

[2]    The fee schedule provides for a royalty of 25% of the wholesale price for the first 10,000 to 50,000 units. EWLA (Dkt. 1-1) at 2. The annual royalty for sales of less than 10,000 units is unclear.

[3]    It is not clear from the Complaint whether the $200,000 represents royalty payments, guaranteed margin, or some combination of the two.

Defendants. *See id.* ¶ 121; Dkt. 1-8 at 2. Defendants also allegedly began selling injection devices that bore Plaintiff's AQUAGOLD trademarks. Compl. (Dkt. 1) ¶ 124.

Defendants' online advertising, on their website and social media pages, describe Plaintiff's product as "fake." *Id.* ¶ 143. Defendants have allegedly used Facebook to send disparaging messages about Plaintiff to Plaintiff's distributors. *Id.* ¶¶ 147–48. On Instagram, Defendants have used the handle @tappy_aquagold to post numerous images of AQUAGOLD. *Id.* ¶ 146. Additionally, on March 19, 2019, a "Warning Notice" was posted on the U-Biomed website, claiming that Plaintiff stole Defendants' intellectual property. *Id.* ¶ 186.

Plaintiff alleges that multiple distributors have been confused by Defendants' marketing strategies and have demanded that Plaintiff lower the price of AQUAGOLD, which sold for $175 each, to compete with Defendants' advertised price of $20. *Id.* ¶¶ 177–84. Plaintiff has also reportedly received complaints from confused customers who received marketing communications from Defendants. *Id.* ¶ 185.

On April 15, 2019, Plaintiff commenced this action, alleging breach of contract (the EWLA), trademark infringement and false advertising pursuant to the Lanham Act, tortious interference, defamation, unfair competition, and deceptive business practices. *See generally* Compl. (Dkt. 1). On the same day, Plaintiff sought a temporary restraining order, which was granted and later converted into a preliminary injunction when Defendants failed to appear at the hearing. Dkts. 3,19. Defendants later filed a motion to modify the preliminary injunction, which was granted, Dkt. 65, and a motion to dismiss this case for lack of personal jurisdiction, which is now before the Court.

## II. DISCUSSION

On a Rule 12(b)(2) motion to dismiss, the plaintiff has the burden of demonstrating personal jurisdiction. *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). "[W]hen the issue of personal jurisdiction 'is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case.'" *King Cty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)). To overcome Defendants' challenge to the sufficiency of the Complaint, Plaintiff need only have "plead[ed] facts which, if true, are sufficient in themselves to establish jurisdiction." *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citing *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564–65 (S.D.N.Y. 1997)). For purposes of this motion, the Court must assume the truth of Plaintiff's well-pleaded factual allegations. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *Tamam*, 677 F. Supp. 2d at 725.

Plaintiff cites three alternative bases for personal jurisdiction—the EWLA, which contains an agreement to submit to the jurisdiction of federal and state courts in New York for the adjudication of any disputes arising from the agreement, and two provisions of the New York long-arm statute, which pertain to the transaction of business in New York and the commission of tortious acts causing harm in New York. Compl. (Dkt. 1) ¶ 21.

### A. The EWLA

Section 18.3 of the EWLA, titled "Governing Law," provides that:

Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the

enforcement of this Agreement), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is improper.

EWLA (Dkt. 1-1) at 7–8. Defendants argue only that this clause is a nullity because the EWLA itself is unenforceable due to lack of mutuality of consideration.[4] That is, Defendants contend that the EWLA places numerous obligations on Defendants, without requiring any action or forbearance from Plaintiff. Def. Br. (Dkt. 33) at 6. According to Defendants, any obligation to pay royalties or a margin for devices manufactured by Defendants is illusory and cannot serve as consideration because the EWLA does not set a minimum quantity that Plaintiff must sell to others or purchase from defendants. *See id.* at 8–9. Even assuming that the forum-selection clause, which requires all parties to agree to suit in New York, and the mutual non-competition and non-solicitation clauses in the EWLA do not constitute adequate mutual consideration, Defendants' argument is meritless.

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."[5] *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (1st Dep't 2009). A contract may be unenforceable if the consideration is not mutual—that is, if one side is not obligated to provide any consideration in exchange for the other's performance. *See Robert L. Haag, Inc. v. Swift & Co.*, 696 F.2d 30, 31 (2d Cir. 1982) ("[I]f one party provides no enforceable consideration for the agreement, it may not enforce the agreement against the other party."); *Dorman v. Cohen*, 66 A.D.2d 411, 415

---

[4] Defendants do not contend that the clause is unenforceable because it is "unreasonable and unjust" or for any other similar reason. *See New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ("A forum selection clause is enforceable unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." (citation omitted)). Nor do Defendants contend that, if the EWLA were enforceable, that this action would be beyond the scope of the forum selection clause.

[5] Defendants do not dispute that New York law governs the interpretation of the EWLA. *See* Def. Br. (Dkt. 33) at 8 (citing and relying on New York case law).

5

(1st Dep't 1979) ("While mutuality of obligation does not mean equality of obligation, it does mean that each party [m]ust be bound to some extent.").

It is well-settled New York law that a lack of mutuality of consideration at inception may be cured by subsequent performance of the parties. *See, e.g.*, *Ferguson v. Ferguson*, 97 A.D.2d 891, 892 (3d Dep't 1983) ("The absence of mutuality of obligation 'may be remedied by the subsequent conduct of the parties.'" (quoting N.Y. Jur. 2d, Contracts § 11)).[6] "[W]hen the obligation of a unilateral promise is suspended for want of mutuality at its inception, [] upon performance by the promisee, a consideration arises which relates back to the making of the promise; and it becomes obligatory." *Grossman v. Schenker*, 206 N.Y. 466, 468 (1912) (citation omitted).

Here, although Defendants contend that Plaintiff was not obligated to sell any minimum quantity of devices pursuant to the EWLA, or to purchase any such devices from Defendants, Plaintiff has alleged that it in fact purchased devices from Defendants in accordance with the EWLA. *See, e.g.*, Compl. (Dkt. 1) ¶¶ 95–96, 111. Furthermore, Plaintiff took active steps to market Defendants' devices and increase demand for the product, which would generate a royalty per device sold.[7] *See id.* ¶ 103 ("Shortly after finally receiving its first order of AQUAGOLD manufactured by Defendants, Plaintiff launched AQUAGOLD at the American

---

[6] *See also Baum v. Beacon Feeds, Beacon Div. of Textron, Inc.*, 31 A.D.2d 734, 734 (4th Dep't 1968) ("A promise void when made for want of mutuality of obligation becomes valid and binding upon the performance by the promisee of that in consideration of which such promise was made." (citing *Willetts v. Sun Mut. Ins. Co.*, 45 N.Y. 45, 47 (1871))); *Mar-Bond Beverage Corp. v. Dublin Distributors, Inc.*, 9 A.D.2d 951, 951–52 (2d Dep't 1959) ("[P]laintiff alleged that, for 45 months prior to cancellation of the contract by defendants, it sold defendants' product and built up a demand therefor. Such performance, on plaintiff's part, would render the contract binding and enforcible, even if it had lacked mutuality at its inception.").

[7] Even if Plaintiff had not performed by promoting Defendants' devices, such an obligation would have been implied as part of the licensing and royalty arrangement. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, (1995) (explaining duty of good faith and fair dealing).

6

Academy of Dermatology Annual Meeting on March 23, 2014."). Such efforts suffice to make the EWLA enforceable, even if it were not at its inception.[8] *See Baum*, 31 A.D.2d at 734 ("The mere fact that the agreement lacked mutuality at its inception because plaintiff was not obligated to buy the feed and defendant was not obligated to render debeaking services does not prevent the existence of a valid contract; once the plaintiff performed, defendant became obligated to perform.").

Defendants' argument that subsequent performance is irrelevant is not supported by case law. They rely exclusively on *Chicago & G.E. Ry. Co. v. Dane*, 43 N.Y. 240 (1870), which is distinguishable and, in any event, does not support their position. In *Dane*, the railroad defendant had offered, by letter, to transport the plaintiff's iron for a limited period of time up to a specified maximum quantity for a specified price per ton. *Id.* at 242. The plaintiff responded, by letter, that it accepted the offer, but the plaintiff did not promptly ship any iron. *See id.* at 242–43. Instead, four months later, Plaintiff provided a shipment of iron and, apparently, defendant declined to honor the price it had previously offered.[9] *Id.* at 243. Plaintiff then sued, apparently to enforce the terms of the offer. *See id.* at 241–42.

While *Dane* held that the exchange of letters did not create a contract, the Court of Appeals nevertheless indicated that a subsequent request by the plaintiff to transport iron could have bound the defendant, had that request been made in a "reasonable" time. *Id.* at 243. The Court of Appeals held that the exchange of letters did not obligate the plaintiff to ship any iron but instead had created an option. *Id.* at 242–43. Because the option was not supported by

---

[8] Defendants' reliance on a 1921 decision from the Court of Appeals of New York, which did not discuss the significance of subsequent performance, is therefore inapposite. *See Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 460–61 (1921) (holding that agreement by defendant to provide to plaintiff, a salesperson, as much glue as plaintiff may later be able to sell was not enforceable because plaintiff was not obligated to sell any glue or even to make any effort to do so).

[9] The Court of Appeals' discussion of the facts is somewhat vague.

7

consideration, it was not enforceable months later. *Id.* In so holding, however, the Court explained that had the plaintiff promptly shipped iron, the railroad would have been bound by the terms it had offered, even though there was no mutual consideration at the outset: "the plaintiff was at liberty to accept this proposition for any specified quantity not beyond that limited; and had it done so, a contract mutually obligatory would have resulted therefrom, the breach of which by either party the other could have maintained an action for the recovery of the damages thereby sustained." *See id.* at 242. Thus, even though the initial exchange of letters did not obligate the plaintiff to ship any quantity of iron and therefore did not create an enforceable contract at the outset, the exchange of letters would have created an enforceable contract had the plaintiff shipped iron within a reasonable period of time following the exchange. *See id.* at 243 (holding that plaintiff's request to "transport a specified quantity of iron" in August did not furnish mutuality of obligations because "plaintiff was bound to accept in a reasonable time and give notice thereof"). As such, *Dane* cannot support Defendants' sweeping proposition that subsequent undertakings by an initially unencumbered party can never render enforceable what was originally an unenforceable agreement.

That reading of *Dane* is consistent with subsequent decisions from the Court of Appeals. In *Willetts v. Sun Mutual Insurance Co.*, for example, the defendant insurer told the plaintiff that if the plaintiff went to Washington D.C., found and claimed barrels of cider, and sold the cider at auction, the defendant would pay the deficiency between the claimed value of the cider and the price it fetched at auction. 45 N.Y. 45, 47 (1871). After the plaintiff fulfilled those conditions, the defendant refused to pay. *Id.* The defendant argued there was no contract because the plaintiff was not obligated to perform those tasks. *See id.* The Court of Appeals disagreed. "The [insurance company's] promise could not be enforced before performance of the condition

8

on which it is made, for until then there is no consideration. But as soon as the act has been performed, by which a party has been injured unless the promise is kept, the promise becomes binding." 45 N.Y. at 47. Similarly, in *Grossman*, the Court of Appeals re-affirmed the proposition that subsequent performance of a condition can cure a prior lack of mutuality of consideration, distinguishing the holding in *Dane*. *See* 206 N.Y. at 468, 470 (citing *Willetts*, 45 N.Y. at 47 and *Dane*, 43 N.Y. at 242). In short, Defendants' reliance on *Dane* is unavailing.

For those reasons, the Court, assuming the truth of Plaintiff's factual allegations, concludes that Plaintiff has made a *prima facie* showing that the EWLA is an enforceable contract. Although Plaintiff was not obligated to buy or sell any microdevices, having done so, any previous lack of mutuality was cured. Thus, as set forth in the forum selection clause contained in EWLA, Defendants have submitted to the jurisdiction of the Southern District of New York and have waived any challenge to personal jurisdiction. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction will be denied.

### B. New York's Long-Arm Statute

The parties also dispute whether there exists an independent basis for personal jurisdiction absent the EWLA. Specifically, Defendants contend that the sale of Tappy Tok-Tok with AQUAGOLD promotional materials to a buyer located in New York has no relationship to Plaintiff's claims because the product sold was Tappy Tok-Tok, not AQUAGOLD. *See* Def. Br. (Dkt. 33) at 10. That argument confuses the jurisdictional analysis with the merits of Plaintiff's trademark claims, which include Defendants' use of AQUAGOLD's marks, and Defendants have not sought to dismiss the case pursuant to Rule 12(b)(6). In any event, the Court declines to address whether personal jurisdiction is proper pursuant to N.Y. C.L.P.R. § 302 because personal jurisdiction has already been established by the EWLA.

9

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.  The Clerk of Court is respectfully directed to terminate the pending motion at docket entry 32.

**SO ORDERED.**

Date:  **February 19, 2020**  　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　**New York, New York**　　　　　　　　　　　　　　**VALERIE CAPRONI**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**