```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/05/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
AQUAVIT PHARMACEUTICALS, INC.,

                               Plaintiff,

             -against-

U-BIO MED, INC., GLOBAL MEDI PRODUCTS,
and NYUN SHI EUM aka NYON-SIK EUM,

                              Defendants.
-------------------------------------------------------------------- X

19-CV-3351 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

      In this trademark infringement and breach of contract action, Defendants U-Bio Med, Inc. and Nyun Shi Eum[1] ("Defendants") counterclaim against Plaintiff for a declaratory judgment that the agreement underlying Plaintiff's breach of contract claim is unenforceable, for unjust enrichment, for defamation, and, as an alternative, for breach of the same contract that is alleged to be unenforceable. For the reasons that follow, the Court dismisses Defendants' declaratory judgment and unjust enrichment claims; the breach of contract counterclaim is dismissed in part.

### I.    BACKGROUND

      The Court assumes familiarity with the procedural history of this case. *See, e.g.*, *Aquavit Pharm., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2020 WL 832249, at *1 (S.D.N.Y. Feb. 19, 2020). In short, Plaintiff sued Defendants for breach of contract and trademark infringement because, after the parties' licensing arrangement fell apart, each claimed to be the authentic

---

[1]    Defendant Global Medi Products has not appeared in this action.

maker and distributor of a trademarked injection device, which allegedly has cosmetic applications. *See generally* Compl. (Dkt. 1). Defendants have now asserted a series of counterclaims, including a claim for a declaratory judgment that the licensing agreement underlying Plaintiff's breach of contract claim is unenforceable; Defendants also assert counterclaims for unjust enrichment, breach of contract, and defamation. *See generally* Am. Countercl. (Dkt. 129). Plaintiff moves to dismiss all counterclaims except for defamation. *See* Pl. Br. (Dkt. 150-1).

On July 14, 2013, the parties entered into a licensing agreement that allowed Plaintiff, the licensee, to market and reproduce an injection device that Defendants purportedly invented. *See* Exclusive Worldwide Licensing Agreement ("EWLA") (Dkt. 1-1) at 1 & § 2;[2] Am. Countercl. ¶¶ 4–5. Per the EWLA, Plaintiff must pay Defendants an annual royalty fee based on the number of devices sold, as set forth in the EWLA's fee schedule. EWLA § 5.[3] Plaintiff has the option of fulfilling any sales orders by manufacturing the devices directly or by purchasing the devices from Defendants at a price that guarantees Defendants a margin of 40%. *See id.* §§ 2.3, 6. The EWLA also contains numerous other provisions, including non-compete and non-solicitation clauses binding on all parties until 24 months after the termination of the agreement. *See generally id.*

Defendants argue that the EWLA is unenforceable because the circumstances under which the agreement was negotiated and signed rendered it unconscionable and the product of

---

[2] For purposes of this motion, the Court accepts as true all well-pleaded factual allegations in the amended counterclaims; the Court may also consider documents that are integral to the pleading or incorporated by reference, including the EWLA. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court is not obligated to accept Defendants' allegations as to the construction of the EWLA, although ambiguities must be construed in their favor at this stage. *See Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

[3] The fee schedule provides for a royalty of 25% of the wholesale price for the first 10,000 to 50,000 units. EWLA § 5. The annual royalty for sales of less than 10,000 units is unclear.

fraud or mistake. Am. Countercl. ¶¶ 19, 21. Negotiations for the EWLA allegedly began in early 2013. *Id.* ¶ 9. During those negotiations, Defendants allegedly informed Plaintiff that any agreement they negotiated "had to include minimum quantities of product to be purchased by Plaintiff." *Id.* ¶ 11. Plaintiff allegedly "assured [Defendants] that the EWLA as drafted by Plaintiff was fair and included what UBM needed." *Id.* Then, at a trade convention in Las Vegas on July 14, 2013, Plaintiff's CEO, Sobin Chang, allegedly presented Defendant Eum, who was the CEO for Defendant U-Bio Med, Inc., with a draft of the EWLA. *Id.* ¶ 14. The EWLA was drafted in English without a Korean translation, even though Plaintiff allegedly knew that Eum had a "poor" command of English. *Id.* ¶¶ 12–13. Allegedly unbeknownst to Eum, who could not read and understand the EWLA, the agreement did not include a minimum purchase quantity and merely required Defendants to supply as many devices as Plaintiff decided to order from Defendants. *Id.* ¶ 16. The agreement was signed on the convention floor, and Chang retained the only original. *Id.* ¶ 14.

Plaintiffs purchased devices from Defendants for approximately two years, until Plaintiff allegedly transferred Defendants' design and other intellectual property to a third-party manufacturer that began fulfilling Plaintiff's orders, obviating the need for Plaintiff to purchase from Defendants. *Id.* ¶ 31. Plaintiff allegedly failed to pay Defendants royalties for the devices produced by the third-party manufacturer. *Id.* ¶ 33.

## II.  DISCUSSION

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A counterclaim, like a complaint, "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an

entitlement to relief above the speculative level." *See Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (citation omitted).

### A. Count I: Declaratory Judgment

Defendants' first counterclaim seeks a declaratory judgment that the EWLA is unenforceable on the grounds of lack of mutual consideration, unconscionability, fraudulent inducement, and unilateral mistake.[4] Am. Countercl. ¶ 21. "The Declaratory Judgment Act . . . vests a district court with discretion to exercise jurisdiction over a declaratory action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citing 28 U.S.C. § 2201(a)). To decide whether to entertain an action for declaratory judgment, a district court must ask "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* (citation omitted). A counterclaim seeking a declaratory judgment does not serve a useful purpose and may be dismissed if it simply parallels the counterclaimant's affirmative defenses, does not broaden the scope of the dispute, and would not present a live controversy once the plaintiff's diametrically opposed claim has been resolved on the merits. *See Arista Records LLC v. Usenet.com., Inc.*, No. 07-CV-8822, 2008 WL 4974823, at *4–5 (S.D.N.Y. Nov. 24, 2008).

---

[4]  Defendants' argument as to lack of mutual consideration rests on the allegation that Plaintiff was not required to purchase any minimum quantity of devices from Defendants. Am. Countercl. ¶ 21. The Court has already rejected this identical argument when Defendants raised it in their motion to dismiss: subsequent performance under the EWLA cured any initial lack of consideration. *See Aquavit Pharm.*, 2020 WL 832249, at *3. Although that decision was based on the Complaint, Defendants' counterclaims has also pleaded subsequent performance. Am. Countercl. ¶ 31 (alleging that Plaintiff stopped purchasing from Defendants after about two years). Accordingly, for the same reasons articulated in the Court's earlier opinion, Defendants' declaratory judgment claim, to the extent based on an alleged lack of consideration, is dismissed with prejudice. *See Aquavit Pharm.*, 2020 WL 832249, at *3.

4

Here, Defendants' declaratory judgment action rests on four legal arguments that are identical to their affirmative defenses. *See* Answer (Dkt. 129) at 24. As a result, the declaratory action is entirely duplicative of Plaintiff's breach of contract claim—and any resolution of the merits of Plaintiff's claim will necessarily resolve Defendants' counterclaim. To the extent that Plaintiff's contract claim is not resolved on the merits and Defendants continue to have an interest in a ruling on the validity of the EWLA, Defendants may seek to re-plead a declaratory action counterclaim at that point. Because Defendants have answered, Plaintiff needs either the Court's leave or Defendants' consent before dismissing this action prior to a merits decision. *See* Fed. R. Civ. P. 41(a); *Arista Records*, 2008 WL 4974823, at *5 ("If Plaintiffs were to voluntarily dismiss their Complaint, [Defendant] would not necessarily be threatened with future litigation by Plaintiffs, because once an answer has been filed the Court has the discretion to determine the proper terms of dismissal and whether it is with prejudice.").

In other words, Defendants' first counterclaim is redundant and nothing more than a distraction at this point. It is dismissed without prejudice, except as to the lack of mutual consideration argument, which is dismissed with prejudice.

### B.  Count II: Unjust Enrichment

Defendants allege that they are entitled to the benefits that they would have received had Plaintiff continued to purchase the injection devices from Defendants, rather than utilizing Defendants' intellectual property to procure the devices from the third-party manufacturer. Am. Countercl. ¶ 33. To plead an unjust enrichment claim under New York law, Defendants must allege that that Plaintiff "was enriched at [Defendants'] expense and that equity and good conscience require [Defendants] to recover the enrichment from" Plaintiff. *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009). The claim "is available only in unusual situations

5

when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Plaintiff argues that Defendants' unjust enrichment claim should be dismissed because it concerns conduct that is governed by the EWLA and is therefore duplicative of Defendants' contract claim. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89 (1987) ("[A] quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved." (quotation omitted)). Certainly, no equitable relief would be appropriate if the enforceability of the EWLA were undisputed. *See id.* ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is *undisputed*, and the scope of which clearly covers the dispute between the parties." (emphasis added)). At this stage, however, the validity of EWLA is contested. Regardless of the likelihood that Defendants' contract claim will be successful, it would be premature to preclude Defendants from pursuing unjust enrichment and contract claims in the alternative.[5]

Plaintiff correctly argues, however, that the unjust enrichment claim should be dismissed because a remedy was undisputedly available under the recognized tort of misappropriation of trade secrets. Pl. Br at 22–23; *see E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 452 (2018) ("A plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a

---

[5]   Although Plaintiff argues that an unjust enrichment claim is "not viable [even] when the claim [] seeks the enforcement of [an] unenforceable contract," that argument misreads the case law. Pl. Br. at 22 (quoting *Komolov v. Segal*, 975 N.Y.S.2d 709, at *4 (Sup. Ct. 2013), *aff'd*, 117 A.D.3d 557 (1st Dep't 2014)). *Komolov* is an exception to the alternative pleading rule; it pertains to the specific scenario in which a party attempts to use unjust enrichment to enforce the terms of a contract that has been invalidated by the statute of frauds. *See id.*; *see also Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 412 (S.D.N.Y. 2016) ("A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment." (quotation omitted)). Accordingly, the principle set forth in *Komolov* is inapposite.

trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." (quotation omitted)).  Unlike with the contract claim, Defendants do not appear to dispute that the trade secrets tort would have been available to address the alleged conduct underlying their unjust enrichment claim—but for the expiration of the statute of limitations.  *See* Defs. Br. (Dkt. 155) at 14.  Defendants' only argument against dismissal on this ground is that they view the unjust enrichment claim as an alternative to their breach of contract claim, not to an unpursued misappropriation claim.  *See id.*  That may be so, but permitting Defendants to advance an unjust enrichment claim in place of what would be an untimely trade secrets claim would circumvent the statute of limitations of a recognized tort and allow Defendants to obtain relief that they failed to pursue diligently.  Unjust enrichment, an equitable remedy, is unavailable under these circumstances.  *See Corsello*, 18 N.Y.3d at 790 ("[U]njust enrichment is not a catchall cause of action to be used when others fail.").

Plaintiff's motion to dismiss Defendants' second counterclaim is, therefore, granted.

### C.  Count III: Breach of Contract

Defendants allege that Plaintiff breached the EWLA by switching manufacturers and failing to pay royalties.  Am. Countercl. ¶¶ 33, 38.  Under New York law, "[t]he elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and resulting damages." *Detringo v. S. Island Family Med., LLC*, 158 A.D.3d 609, 609–10 (2d Dep't 2018) (citations omitted).  "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC*, 31 N.Y.3d 1002, 1006 (2018) (quotation omitted); *see also Edwards v. Sequoia*

*Fund, Inc.*, 938 F.3d 8, 12–13 (2d Cir. 2019) ("[T]he words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties." (quotation omitted)).

Defendants are unable to identify any express term that forbids Plaintiff from switching manufacturers and instead attempt to rely on the implied duty of good faith and fair dealing. *See* Am. Countercl. ¶ 38. That claim fails as a matter of law because the EWLA unambiguously conferred on Plaintiff wide discretion in deciding how to utilize Defendants' intellectual property. The EWLA expressly confers on Plaintiff an "unlimited" "license" to "exploit," "sub-license," or "reproduce" Defendants' injection technology. EWLA §§ 2.3, 4 ("Aquavit shall have the right and sole and complete discretion to sub-license this License as and when and in whatever manner it deems fit."). In other words, the EWLA gives Plaintiff the right to use Defendants' intellectual property with virtually no restrictions,[6] including to sub-license those rights to a third party. Defendants cannot use an implied term to erase express rights given to Plaintiff. *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983) ("No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship."); *see also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002) (holding that a party "cannot avoid the express terms of the contract by relying on the implied covenant of good faith and fair dealing").

Defendants are able to plead a breach of contract, however, based on Plaintiff's alleged failure to pay royalties after switching to a non-party manufacturer. The EWLA contemplates two types of payments between Plaintiff and Defendants. First, the EWLA contains a formula for calculating an annual royalty that Plaintiff must pay to Defendants based on the total volume of injection devices (as defined in Exhibit 1 of the EWLA) sold that year. EWLA § 5. Second,

---

[6] Plaintiff could not, however, assign its rights to an unaffiliated party without consent. EWLA § 13.

the EWLA provides that Plaintiff must pay Defendants for each injection device that Defendants produce at Plaintiff's request, at a price that guarantees Defendants at least a 40% margin. *Id.* § 6. In other words, the annual royalty is calculated and payable based on Plaintiff's sales, regardless of who manufactures the devices, as long as the devices sold come within the EWLA's definition. *See id.* § 1 & Ex. 1 (defining "Authorized Work" and "Product"). Thus, to the extent that Defendants allege that Plaintiff continued to use Defendants' intellectual property to produce injection devices after switching to a third-party manufacturer, and that Plaintiff did so without paying Defendants the annual royalties required under the EWLA, Defendants have stated a viable claim for breach of contract.

Plaintiff argues that Defendants' contract claim cannot stand because Defendants were themselves in material breach, terminated the contract, and failed to perform. *See* Pl. Br. at 24–25. Those facts, regardless of their merit, are outside of the allegations in the amended counterclaims and, therefore, beyond what the Court may appropriately consider at the pleading stage.

For these reasons, Plaintiff's motion to dismiss Defendants' breach of contract counterclaim is granted to the extent that Defendants allege breach based on Plaintiff's decision to switch to a third-party manufacturer; the motion is denied to the extent that the claim seeks redress based on a failure to pay annual royalties for the continued exploitation of Defendants' intellectual property, as defined in the EWLA.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part. Defendants' counterclaim for declaratory judgment is dismissed without prejudice as set forth

above; the counterclaim for unjust enrichment is dismissed with prejudice; and the counterclaim for breach of contract is dismissed in part, with prejudice, as set forth above.

The Clerk of Court is respectfully directed to terminate the pending motions at docket entries 121 and 150.

**SO ORDERED.**

| | |
|---|---|
| **Date: August 5, 2020**<br>New York, New York | *(signature)*<br>**VALERIE CAPRONI**<br>United States District Judge |