UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AQUAVIT PHARMACEUTICALS, INC., *Plaintiff*, v. U-BIO MED, INC., GLOBAL MEDI PRODUCTS, and NYUN SHI EUM aka NYEON-SIK EUM *Defendants*. | No. 1:19-cv-03351-VEC-RWL |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/10/2020

~~[PROPOSED]~~
PLAN FOR DISCOVERY
INCLUDING ELECTRONICALLY STORED INFORMATION

Pursuant to Federal Rule of Civil Procedure 26, Plaintiff Aquavit Pharmaceuticals, Inc. ("Aquavit") and Defendants U-Bio Med, Inc. ("UMB") and Nyun Shi Eum ("Eum") (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree to the following discovery plan (the "Discovery Plan").

**I. Scope**

1. This Discovery Plan shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

3. Nothing in this Discovery Plan shall supersede the provisions of any Protective Order entered in this case.

{00473855 }   1

4. The Parties have identified the categories of discovery, including ESI, most relevant to the Parties' claims or defenses in this matter as the categories of evidence identified in their respective initial disclosures. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a party's right to request additional discovery, or any party's right to object to production, the parties incorporate by reference the categories of information recited in the parties' initial disclosures as the categories most likely to result in the production of information most relevant to the issues in the case, to the best of the Parties' knowledge at this time.

5. The scope of discovery will be limited to documents and information, including ESI, in the Parties' possession, custody, or control dated on or after January 2011.

## II. Searching

6. All relevant collections of documents, e-mail and unstructured data will be searched. "Unstructured data" refers to free-form data which either does not have a data structure or has a data structure not easily readable without the use of a computer program designed to interpret the data; created without limitations on formatting or content by the program with which it is being created. Examples include, but are not limited to, word processing documents, spreadsheets, and slide presentations.

7. All e-mail systems will be searched regardless of whether they are stored locally, with an ISP, in the cloud, or otherwise.

8. All online and offline electronic storage will be searched.

9. Unstructured data will be searched without limitation to any specific custodians.

10. Each Party shall be responsible for generating a searching protocol that it believes in good faith will return a reasonably high proportion of responsive documents.

Additionally, the Parties agree to disclose on request of the other party the ESI search terms used. If necessary, the Parties will negotiate the use of additional ESI search terms.

11. Inaccessible data. The following types of data stores are presumed to be inaccessible and are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Back-up data that is substantially duplicative of data that are more accessible elsewhere.

    e. Server, system or network logs.

    f. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    g. Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), but ONLY IF a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or cloud storage).

### III. Production Format

12. Electronically stored information will be produced as Bates-labeled single page TIFF files, as described in Section 1 of Exhibit 1.

13. Each Party reserves the right to request native electronic files for documents before or after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol.

   a. The requesting Party shall make any such request as soon as reasonably practical after receiving a document production or while making a document request.

   b. The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format if not requested until after the document is produced.

   c. Within five (5) business days of receiving this request after a document production, the producing Party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested documents.

   d. If the Parties are unable to agree as to the production of the requested documents in native format, the Parties may submit the matter to the Court.

14. Metadata format.  The Parties agree to produce the ESI metadata fields identified in Section 4 of Exhibit 1 to the extent those metadata fields are available.

15. Load file format.  The Parties agree on the load file specifications provided for in Section 3 of Exhibit 1.

16. De-Duplication. A Party is only required to produce a single copy of a responsive document.

{00473855 }                                                            4

    a. Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. ESI that is not an exact duplicate may not be removed.

    b. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced

    c. Attachments to e-mails shall not be deleted or separated from the parent e-mail.

17. Native files. The Parties will make reasonable efforts to ensure that electronic documents produced in native form are decrypted (or that passwords are supplied), but the Parties have no duty to identify encrypted documents prior to production.

18. Authenticated documents. The Parties can request production of certain documents or information and request that the documents or information be authenticated.

## IV. Third-Party ESI, Documents, or Information

19. A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

20. The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

21. If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

22. However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received

by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

23.    If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## V.  OTHER

24.    In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents - for example, a binder containing several separate documents behind numbered tabs - the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

25.    This Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

26.    Nothing in this Discovery Plan shall be interpreted to require disclosure of information that is not relevant or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

27.    Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

28. Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

## VI. PARTIES' OUTSTANDING DISAGREEMENTS

29. This Discovery Plan addresses some basic disputes that existed between the Parties, but document discovery has not yet progressed sufficiently to allow the Parties to identify additional specific disputes concerning the adequacy of their respective document productions.

DATE: __September 10, 2020__

SO ORDERED.

9/10/2020

_____
ROBERT W. LEHBURGER
UNITED STATES MAGISTRATE JUDGE

By: /s/ Daniel J. Nevrivy_____
Daniel J. Nevrivy
(admitted pro hac vice)
Nevrivy Patent Law Group P.L.L.C.
1000 Potomac Street, NW
Suite 200
Washington, D.C. 20007
dnevrivy@nevrivylaw.com
202-650-6905
*Counsel for Plaintiff*

By: /s/ Thomas J. Vetter_____
Thomas J. Vetter (TV 0364)
LUCAS & MERCANTI, LLP
30 Broad Street
New York, NY 10004
tvetter@lmiplaw.com
(212) 661-8000
*Counsel for U-Bio Med, Inc. and Nyeon-Sik Eum*

{00473855 }                               7

**EXHIBIT 1**

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and White unless color is necessary to understand the meaning
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 2)
   - Original document orientation shall be retained

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format:  Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

3. **LOAD FILE SPECIFICATIONS [***Insert modifications, if any, to fit the needs of the particular case***]:**
   - **Images Load File**: OPT file
   - **Metadata Load File**:  DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT:**  Reference File Path to TEXT file in DAT file
   - **Native Files Produced:**  Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS [***Insert modifications, if any, to fit the needs of the particular case* **]:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**:  Beginning Bates number of the first document in an attachment range
   - **EndAttach**:  Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **FileName**:  Filename of the original digital file name
   - **NativeLink**:  Path and filename to produced Native file
   - **EmailSubject**:  Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document
   - **Author**:  Author field extracted from the metadata of a non-email document
   - **From**:  From field extracted from an email message
   - **To**: To or Recipient field extracted from an email message
   - **Cc**:  CC or Carbon Copy field extracted from an email message
   - **BCC**:  BCC or Blind Carbon Copy field extracted from an email message
   - **DateRcvd**:  Received date of an email message (mm/dd/yyyy format)
   - **DateSent**:  Sent date of an email message  (mm/dd/yyyy format)
   - **DateCreated**:  Date that a file was created  (mm/dd/yyyy format)
   - **DateModified**:  Modification date(s) of a non-email document

- **Fingerprint**:  MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume**:  Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Redacted**:  "Yes," for redacted documents; otherwise, blank

6. **PAPER DOCUMENTS METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**:  Beginning Bates number of the first document in an attachment range
   - **EndAttach**:  Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **ProdVolume**:  Identifies production media deliverable