# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| AQUAVIT PHARMACEUTICALS, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 1:19-cv-03351 (VEC) |
| v. | ) | |
| | ) | |
| U-BIO MED, INC., | ) | |
| GLOBAL MEDI PRODUCTS, and | ) | |
| NYUN SHI EUM aka NYEON-SIK EUM | ) | |
| | ) | |
| *Defendants*. | ) | |

_____

**JOINT STATUS REPORT REGARDING DETERMINATION OF COMPENSATORY AND COERCIVE SANCTIONS AND DELETION OF DEFENDANTS' INSTAGRAM ACCOUNT**

On September 3, 2020, the parties submitted a plan to the Court setting forth proposed discovery and briefing for a determination of compensatory and coercive sanctions. *See* Dkt. 195. On September 4, 2020, the Court issued an order adopting the parties' plan. *See* Dkt. 196. On November 20, 2020, the Court issued an order indicating that the parties shall file a joint status report. *See* Dkt. 201.

**Plaintiff's Statement Regarding Status**

The discovery and briefing plan called for the discovery to be produced by September 28, 2020, and that the briefing would commence within three weeks after the discovery production. *See* Dkt. 196. On September 25, 2020, Defendants contacted the Plaintiff and indicated that they would need more time for the discovery production, and requested that the deadline be moved back. Defendants indicated that moving the deadline to October 5, 2020 would be enough to accomplish a partial production and the addition of three weeks to the September 28, 2020 production deadline should allow for a complete response. On October 16, 2020, Plaintiff requested a status update on the Defendants' production, and Defendants indicated that "we are making progress" and that they "think one more week will do it." On October 25, 2020, Plaintiff reminded Defendants about the discovery production deadline.

Plaintiff corresponded with Defendants on November 20, 2020 indicating that the parties had met and conferred on the contempt and sanctions abbreviated discovery and the Court has ruled on those discovery issues. Plaintiff requested that Defendants immediately provide their responses to the discovery and indicated that the parties should prepare and file a status letter to the Court letting the Court know what is happening on the contempt and sanctions discovery. The Plaintiff indicated that in an absence of an agreement by Defendants to do that, Plaintiff would plan on filing a single letter with the court updating the Court on the status of the

{00512131 }                                                    2

contempt and sanctions proceedings, and also will consider asking the Court for leave to file a sanctions brief even without any productions made by Defendants.

Plaintiff has yet to receive any responses to its abbreviated discovery requests from Defendants.

**Defendants' Statement Regarding Status**

Defendants' collection of information requested by Plaintiff has proven to be more difficult and time consuming than Defendants' counsel anticipated, but progress is being made. There have been difficulties that stem from the Covid-19 pandemic, which has dramatically affected Defendants UBM and Dr. Eum, including that UBM has only very limited staff compared to before the pandemic, and from language barriers, a distant location literally on the other side of the world, and significant time differences between Defendants and Defendants' counsel, and from UBM's need to direct efforts toward business unrelated to microneedle devices to survive under the circumstances.

With that being said, Defendants have a much larger concern here.  It is plain that Plaintiff's goal here is to fast track the contempt issues and deal with them exclusively, while ignoring the merits of the case.

Plaintiff obtained a TRO, and later the Modified Preliminary Injunction, based on United States trademarks, e.g., "Aquagold."  Notably, Defendants have registered trademarks for "Aquagold" outside the United States, in the countries of the European Union, for example, among other countries, including Korea.  It is also notable that Defendants have never directed their sales of "Aquagold" toward or into the United States.

The only way that Plaintiff was able to obtain personal jurisdiction here was by improperly having an agent attempt to purchase one of Defendants' Aquagold devices for

delivery to New York.  Despite Plaintiff's attempt through its agent, who was not a bona fide purchaser, Defendants declined to sell an Aquagold device into New York, instead providing a "Tappy Tok Tok" device that had nothing to do with Plaintiff's Aquagold trademark. Ultimately, the Court based personal jurisdiction on a *brochure* that happened to be included with the shipment.  It was a standard brochure that Defendants normally included with their Tappy Tok Tok shipments.  Most of the brochure concerned UBM's many different products.  A very small part of the brochure referred to Defendants' Aquagold products.

Incredibly, the contempt issues here are all based on activity *outside* the United States. How is that so?  It is because Plaintiff made unsubstantiated false allegations in its application for the TRO and preliminary injunction.  For one, Plaintiff alleged a significant worldwide presence with its Aquagold products (see, e.g., Complaint [DE 1] ¶ ¶ 33, 35, 55).  For another, Plaintiff alleged falsely, and without proof or support, that Defendants' microneedle devices were inferior and made with sub-standard components, with dull, bent or broken needles, contaminated with dust or hair, and not sterile (Id., ¶ ¶ 12, 42).  It should be noted that Defendants are not copiers or pirates.  They designed and first manufactured and sold the microneedle devices at issue.  It was Plaintiff who copied Defendants' device.

These allegations, among others, were central to the Court's decision to provide extraterritorial protection to Plaintiff's United States trademark.  "The primary impact that Defendants' European sales of 'Aquagold' are likely to have on Plaintiff's business in the United States is loss of good will and damage to reputation, which may result from Defendants' sale of allegedly "inferior" injection devices."  (Modified Preliminary Injunction Order [DE 65], page 4).  While the Court commented that Defendants did not appear to dispute those allegations,

disputing them would have been trying to prove a negative.  Proof that the allegations are false requires discovery from Plaintiff.

In July 2019, Defendants served on Plaintiff two sets of written discovery focused in specific detail on the unsubstantiated allegations in the Complaint and in Plaintiff's applications for injunctive relief.  As of today, Plaintiff has not provided more than a token document production comprising a disorganized collection of unrelated documents, none with metadata, that utterly fails to even begin addressing Plaintiff's false allegations.  Importantly, Defendants' discovery requested Plaintiff's worldwide sales and advertising data; information that should be readily available and easily produced, and that would reveal how limited Plaintiff's worldwide presence really was.  It also seeks the details underlying Plaintiff's allegations concerning the quality of Defendants' product.

On October 23, 2020, Defendants wrote a demand letter to Plaintiff concerning Plaintiff's discovery failures and listing a host of shortcomings in Plaintiff's written responses.  The letter requested a meet and confer as required by the Court for the following week.  On Tuesday of the following week, Plaintiff requested that the meet and confer be put off until a week later, Tuesday, November 3.  On November 3, Plaintiff advised that the meet and confer would need to be rescheduled to the following week.  The parties initiated the meet and confer on November 11, but it became abundantly clear to Defendants that Plaintiff still had not formulated its positions concerning the issues raised in Defendants' October 23 letter.  For the sake of efficiency, it was agreed each party would provide to the other by Friday, November 13, a written statement of its positions on pending discovery issues.  Defendants provided their written response as agreed on November 13, but Plaintiff did not.  In fact, Plaintiff still has not done so.

On November 24, Defendants advised Plaintiff that while Plaintiff would like to turn this case exclusively into a contempt proceeding, the very foundations of the TRO and the preliminary injunction upon which the contempt was based rests on the allegations made by Plaintiff in obtaining that relief, that Defendants' discovery served in July 2019 is largely directed at those allegations, and that Defendants' discovery demands need to be addressed for purposes of any further contempt proceedings.

Defendants believe that the preliminary injunction was wrongfully issued, not because of any fault by the Court, but because of the false information that was provided to and relied on by the Court. Any further consideration of the contempt issues ought to have the benefit of the facts underlying the Court's extraterritorial extension of the preliminary injunction outside the United States. That information will provide critical background for the Court's consideration in ruling on the contempt issues. The long sought-after discovery from Plaintiff would also move the case along toward a possible settlement.

Toward that end, Defendants propose and request that the discovery on contempt be scheduled to run concurrently with the long-delayed discovery on the merits of the case, including the merits of the preliminary injunction itself.

Plaintiff has added comments below after reviewing Defendants' Statement. Plaintiff's comments only reinforce Defendants' points. Full discovery on all fronts is needed. Moreover, Plaintiff keeps alleging that it is "continuing to suffer from significant damage because of the Defendants' conduct and ongoing contempt of the MPI." That's nonsense. As discovery will show, the "contemptuous" conduct alleged by Plaintiff from the start, all outside the United States, has had no meaningful effect on Plaintiff. There is no good reason to rush discovery or briefing on the contempt issues independent of discovery overall.

One other thing here is that all of the work that Plaintiff does on the "contempt" front, under the current order of the Court, is to be paid 75% by Defendants.  Given that, Plaintiff has every reason to short Defendants on meaningful merits discovery while enthusiastically pressing on the contempt front.  The Court should take all this into consideration.

**Plaintiff's Comments on Defendants' Statement Regarding Status**

Plaintiff disagrees with Defendants' allegations and characterizations above.  Plaintiff would like the parties to follow the plan that was agreed to, and that the Court adopted.  *See* Dkt. 196.  Defendants are trying to make excuses for their contempt of the MPI - of which there no valid ones - and are simply trying to delay the process, muddy the waters and relitigate the MPI, almost a year and a half after it was issued.

Plaintiff and Defendants are meeting and conferring regarding both parties' discovery responses and discovery objections in the broader litigation, outside of the contempt and sanctions discovery and proceedings, where the parties have already met and conferred and where the Court has already ruled.  Defendants have been greatly deficient on discovery and have not produced any discovery since 2019. On October 23, 2020, Defendants served Plaintiff a letter outlining alleged discovery deficiencies and objections based on Plaintiff's responses to interrogatories made in 2019, and document productions made in January and July of 2020.  Plaintiff is in the process of finalizing its response to Defendants' October 23, 2020 letter.  Plaintiff served Defendants a letter outlining Defendants' discovery deficiencies on January 2, 2020, based on Defendants' responses to document productions made in 2019. Defendants responded to that letter with a letter response on November 13, 2020.

Plaintiff has served additional discovery requests on Defendants in April and May of 2020, and has yet to receive any document productions from Defendants based on those requests. Plaintiff is in the process of finalizing a letter to Defendants to request production of such discovery and address any objections made by Defendants.

It is also noted that the parties were working to prepare and file a proposed amended Case Management Plan before the close of fact discovery on October 30, 2020, which included a status update on the contempt and sanctions discovery proceedings. However, this document has yet to be filed. Plaintiff proposed to file it but Defendants indicated they were not ready to file it because "a lot depends on our progress re discovery issues/timing." Since the fact discovery deadline has lapsed, the parties and the Court will need to resolve this issue.

In the meantime, Plaintiff is continuing to suffer from significant damage because of the Defendants' conduct and ongoing contempt of the MPI. Plaintiff sells AQUAGOLD worldwide, not only in the United States. Defendants allege that the contempt issues are all based on activity outside the United States. This is not true. Defendants' contempt also concerns activity within the United States, including sales and marketing of Tappy Tok Tok, private label and unlabeled devices, all of which are marketed by Defendants using Plaintiff's brand name, AQUAGOLD fine touch, and in a manner that equates the products as being the same as the AQUAGOLD device. *See* Dkt. 176. While it is noted above by Defendants that they have registered trademarks for "Aquagold" outside the United States (Plaintiff adds improperly and with many filed after the MPI, and being challenged now in Europe), they fail to mention that they have also recently applied for a trademark for AQAUGOLD fine touch in the United States (U.S. Application No. 88/833343) in March of this year, which is currently under review by the United States Patent and Trademark Office. *See* Dkt. 176, p. 25. Defendants also allege above that they have never directed their sales

of "Aquagold" toward or into the United States.  However, Plaintiff discovered very recent evidence of sales of Defendants' AQUAGOLD devices into the United States, and will be presenting this evidence in its upcoming briefing on sanctions.

Plaintiff strongly disagrees with Defendants that it is trying to turn this case exclusively into a contempt proceeding; it is seeking relief from Defendants' flagrant and ongoing contempt of the MPI, which has significantly damaged Plaintiff.  It is Plaintiff's position that it would like to commence the briefing process as soon as possible, and if necessary, with the evidence it already has.  Plaintiff has already collected a significant amount of evidence of contemptuous sales of Defendants' microneedle devices.  Plaintiff will most likely have reasons to doubt the accuracy of Defendants' contemptuous sales discovery evidence it produces based on their conduct and prior assertions about contempt sales not consistent with evidence as well as new evidence collected from sales into the United States.  *See, e.g*., Dkt. 176.

By: /s/Daniel J. Nevrivy
Daniel J. Nevrivy
(admitted pro hac vice)
Nevrivy Patent Law Group P.L.L.C.
1000 Potomac Street, NW
Suite 200
Washington, D.C. 20007
dnevrivy@nevrivylaw.com
202-650-6905
*Counsel for Plaintiff*

By: /s/Thomas J. Vetter
Thomas J. Vetter (TV 0364)
LUCAS & MERCANTI, LLP
30 Broad Street
New York, NY 10004
tvetter@lmiplaw.com
(212) 661-8000
*Counsel for U-Bio Med, Inc. and
Nyeon-Sik Eum*