USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                      :
AQUAVIT PHARMACEUTICALS, INC.,        :
                                                      :
                                      Plaintiff,    :          19-CV-3351 (VEC)
                                                      :
                         -against-                 :                <u>ORDER</u>
                                                      :
U-BIO MED, INC., GLOBAL MEDI PRODUCTS,   :
and NYUN SHI EUM aka NYON-SIK EUM,      :
                                                      :
                                           Defendants.    :
                                                      :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

WHEREAS on April 15, 2019, Aquavit Pharmaceuticals, Inc. ("Plaintiff") filed a complaint against U-Bio Med, Inc. and Nyun Shi Eum (collectively "Defendants"),[1] Compl., Dkt. 1;

WHEREAS both Plaintiff and Defendants claim they have the right to use the trademark AQUAGOLD, as well as other marks, in different countries in connection with a micro-injection device with medical and cosmetic applications, *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2020 WL 1900502, at *1 (S.D.N.Y. Apr. 17, 2020) ("Contempt Order");

WHEREAS on June 21, 2019, the Court entered a modified preliminary injunction ("MPI") prohibiting Defendants from using AQUAGOLD and other marks in the United States, South Korea, and all other countries except for countries in which Defendants have registered their marks, MPI, Dkt. 65 at 7–11;

---

[1] The complaint was also filed against Global Medi Products. *See* Compl., Dkt. 1. Global Medi Products never appeared in this action. On September 1, 2020, the Court entered a default judgment against Global Medi Products. *See* Default Judg., Dkt. 192.

WHEREAS the MPI requires that Defendants include a disclaimer when they sell their Aquagold device in countries in which they own the marks, stating that their products are manufactured by a different company than the company that manufactures the Aquagold device that is sold in the United States and South Korea, *id.* at 10–11;

WHEREAS the MPI prohibits Defendants from associating their products with Plaintiff's American or Korean trademarks or with Plaintiff's product, *id.*;

WHEREAS the MPI also prohibits Defendants from disparaging Plaintiff's devices, *id.*;

WHEREAS on April 17, 2020, the Court found Defendants in contempt for failing to comply with the MPI on numerous occasions, *see* Contempt Order, 2020 WL 1900502, at *1, *5–7;

WHEREAS the Court awarded Plaintiff compensatory sanctions equal to 75% of Plaintiff's attorneys' fees and costs expended in connection with its contempt motion, *id.* at *10;

WHEREAS on May 1, 2020, Plaintiff informed the Court that Defendants were continuing to violate the MPI, Letter, Dkt. 167;

WHEREAS on August 11, 2020, given Defendants' ongoing violations of the MPI, the Court ordered additional compensatory sanctions, consisting of profits earned and to be earned by Defendants from sales that violate or violated the MPI, Order, Dkt. 180;

WHEREAS on August 11, 2020, the Court referred the determination of the amount of compensatory sanctions to Magistrate Judge Lehrburger for the preparation of a report and recommendation ("R&R"), Orders, Dkts. 180, 181; 28 U.S.C. § 636(b);

WHEREAS on August 26, 2020, Plaintiff moved for an order to show cause why coercive sanctions should not be levied against Defendants given their ongoing violations of the MPI, Motion, Dkt. 185;

WHEREAS on August 26, 2020, the Court referred the motion for coercive sanctions to Judge Lehrburger to be addressed in the same R&R as the determination of the amount of compensatory sanctions, Order, Dkt. 186;

WHEREAS on September 2, 2020, the Court clarified that the R&R should also address whether any delay by Defendants in complying with the MPI was justified and noted that if Defendants finally and fully comply with the MPI, there would be no need for coercive sanctions, Endorsement, Dkt. 194 at 6;

WHEREAS the parties fully briefed the various sanctions-related issues, *see* Dkts. 213–218, 227–231, 232–237, 243–246, 247, 259–261, 264–267, 269;

WHEREAS on July 16, 2021, Judge Lehrburger entered an R&R on the sanctions-related issues, R&R, Dkt. 272;

WHEREAS in the R&R, Judge Lehrburger notified the parties that, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), they had fourteen days to file written objections to the R&R's findings, *id.* at 73–74;

WHEREAS Judge Lehrburger further noted that failure to file objections would result in both the waiver of objections and the preclusion of appellate review, *id.* at 74 (using bold font and all capital letters);

WHEREAS on July 30, 2021, Plaintiff filed an objection to one of Judge Lehrburger's findings in the R&R, Objections, Dkts. 278, 279;

WHEREAS Defendants did not file any objections to the R&R;

WHEREAS in reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1)(C);

WHEREAS as to the portions of an R&R to which no party objects, the Court may accept those findings provided that "there is no clear error on the face of the record," *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note;

WHEREAS an error is clear when the reviewing court is left with a "definite and firm conviction that a mistake has been committed," *see Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)); and

WHEREAS when specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b)(3);

IT IS HEREBY ORDERED that the R&R is adopted in part and modified in part. The Court finds no clear error in the four findings of the R&R to which neither party objected. With respect to compensatory sanctions, Judge Lehrburger concluded that the determination of the dollar amount of profits to be disgorged as compensatory sanctions for Defendants' violations of the MPI should be deferred until the completion of all discovery. *See* R&R, Dkt. 272 at 30–55. The Court finds no clear error in Judge Lehrburger's careful analysis or in his conclusion that Defendants' sales data and Plaintiff's speculative inferences "hardly provide a reliable basis for determining Defendants' profits to be disgorged." *Id.* at 35. Moreover, the Court agrees that additional information is needed with respect to the allocation of sales on a country-by-country basis and the apportionment of any non-contemptuous sales that would reduce the total. *Id.* at 54–55. Accordingly, the Court adopts Judge Lehrburger's recommendation that determination of the amount of Defendants' ill-gotten gains must await completion of all discovery so that the Court will have the benefit of the complete record.

The Court next finds no clear error in Judge Lehrburger's conclusion that the monetary sanctions already imposed on Defendants (namely, the recovery of 75% of Plaintiff's attorneys' fees and costs associated with the sanctions motions) adequately addresses Defendants' deletion of the @aquagoldubio Instagram account, without the need for harsher sanctions. *Id.* at 14–23. The Court agrees that although Defendants intentionally and permanently deleted the Instagram account, which violated the MPI, Defendants' action was not in bad faith and it did not prejudice Plaintiff. *See id.* at 15 (explaining that Defendants deleted the Instagram account in part because "Aquavit kept complaining about it" (citing Eum Decl., Dkt. 231 ¶ 44)); *id.* at 21–22 (noting that Aquavit had downloaded the Instagram posts that it asserted violated the MPI and were the basis for contempt). Accordingly, the Court adopts Judge Lehrburger's recommendation that any sanctions related to the deleted Instagram account be folded into the preexisting sanctions requiring Defendants to pay 75% of Plaintiff's reasonable attorneys' fees and costs associated with the sanctions-related motions.

The Court further finds no clear error in Judge Lehrburger's conclusion that Plaintiff is not entitled, at this time, to sanctions for Defendants' violations of orders and deadlines associated with contempt-related discovery. *Id.* at 23–30. The Court agrees that Plaintiff should have raised much earlier Defendants' failure to comply with Judge Lehrburger's September 28, 2020 production deadline. *Id.* at 26 (noting that Plaintiff did not inform the Court of the problem until a December 2, 2020 status report). With respect to Defendants' overuse of the "Highly Confidential" designation in its document productions, the Court concurs that neither party presented a sufficient record on which to assess the question. *Id.* at 27. Additionally, the Court agrees that Plaintiff has not provided sufficient information to determine to what extent, if at all, Defendants have not admitted to sales that violated the MPI. *Id.* at 28. The Court endorses

Judge Lehrburger's plan to "resolve disputed issues relating to overuse of the Highly Confidential designation, sufficiency of interrogatory responses, and completeness of Defendants' document production." *Id.* at 29.  Continued discovery under Judge Lehrburger's careful supervision will ensure that such issues are addressed at an appropriate stage of the litigation.

But Defendants should not consider the Court's finding that discovery-related sanctions are not warranted at this time as permission to continue violating Judge Lehrburger's discovery-related deadlines and orders.  If Defendants continue to violate Court orders and deadlines and Plaintiff raises those compliance issues in a timely and appropriate manner, additional sanctions may be imposed.  Accordingly, the Court adopts Judge Lehrburger's recommendation that Plaintiff's motion for sanctions for Defendants' discovery violations be denied without prejudice to Plaintiff re-raising such issues at a later stage and upon a more complete record.

The Court additionally finds no clear error in Judge Lehrburger's award of $265,248.00 in attorneys' fees and $2,614.89 in costs to Plaintiff as compensatory sanctions for Defendants' many violations of the MPI, including deletion of the Instagram account. *Id.* at 61–72.  On April 17, 2020, the Court found that compensatory sanctions equal to 75% of Plaintiff's fees and costs expended in connection with its contempt motions are appropriate.  Contempt Order, 2020 WL 1900502, at *10.  Judge Lehrburger was correct to use the "lodestar" method to arrive at a reasonable fee award.  *See* R&R at 62 (collecting cases discussing the lodestar method).  Judge Lehrburger conducted a detailed analysis of the hours Plaintiff's counsels spent on contempt-related work.  He properly evaluated the rates charged, and he trimmed excessive hours.  *See id.* at 63–71.  In short, the Court finds no error in the determination of the attorneys' fees and costs as set forth on page 72 of the R&R.  *Id.* at 72.  Accordingly, the Court adopts Judge Lehrburger's

recommendation that Defendants be ordered to pay Plaintiff $265,248.00 in attorneys' fees and $2,614.89 in costs.

With respect to coercive sanctions, the Court finds no clear error in Judge Lehrburger's conclusion that coercive sanctions "aim at the future" and that coercive sanctions "end as soon as the contemnor ceases his contumacious behavior." R&R at 55 (internal citation omitted). *See also* Endorsement, Dkt. 194 at 6 ("After all, if Defendants finally and fully comply with the MPI, there will be no need for coercive sanctions.") (emphasis in original). In the R&R, Judge Lehrburger found that Defendants remain in violation of the MPI in three of the five ways alleged by Plaintiff. *Id.* at 56–61. The Court finds no clear error in Judge Lehrburger's assessment that Defendants are continuing to violate the MPI in their (1) display of Aquavit's South Korean AQUAGOLD mark on package instructions shown on one of Defendants' Instagram pages; (2) failure to add the required disclaimers to Defendants' YouTube channel and videos; and (3) failure to remove a defamatory news video from Defendants' website. *Id.* at 56, 57–61. The Court also finds no clear error in Judge Lehrburger's conclusion that Defendants have remedied an additional alleged violation — the lack of disclaimers on their tappy.co.kr website — such that coercive sanctions are not warranted. *Id.* at 56, 57. Accordingly, the Court adopts Judge Lehrburger's recommendation that coercive sanctions are warranted to address the three ongoing violations but not to address the allegations with respect to the tappy.co.kr website.

The Court declines to adopt Judge Lehrburger's finding with respect to the final alleged continuing violation of the MPI about which Plaintiff complains; Plaintiff contends that Defendants' use of a screenshot from a video featuring Kim Kardashian constitutes a continuing violation of the MPI. *Id.* at 56–57. Judge Lehrburger was "not persuaded that the snapshot —

7

essentially one frame — from the Kim Kardashian video violates the Injunction." *Id.* at 56. Plaintiff objects to that conclusion. Objection, Dkt. 279. Given Plaintiff's objection, the Court conducted a *de novo* review of the issue. *See* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

Defendants' use of the video featuring Kim Kardashian has been at issue in this litigation for almost two years. *See* Chang Decl., Dkt. 138 ¶¶ 42–45 (contending in a November 2019 declaration that Defendants' website features a video depicting Kardashian using an Aquagold device in contravention of the MPI). Over a year ago, on April 17, 2020, the Court held that the "Kardashian video, even as a single example, is sufficiently egregious that it calls into question Defendants' overall process for ensuring that its online presence complies with the MPI." Contempt Order, 2020 WL 1900502, at *9. In that decision, the Court further found that Defendants' use of the video violated the MPI in three ways: (1) the video caption initially contained an AQUAGOLD mark without a disclaimer;[2] (2) the video was clearly aimed at American consumers by featuring an American celebrity receiving treatment in a California clinic; and (3) the implication that Defendants produced the device used by Kardashian, when it was likely produced by Plaintiff. *Id.*; *see also id.* ("Moreover, because the 'Aquagold' product was being demonstrated in the U.S., the device being deployed was likely Plaintiff's product, and Defendants were hijacking Plaintiff's goodwill and brand recognition, implying that they produced the device used by Kardashian.").

On June 12, 2020, Plaintiff informed the Court that "Defendants continue to use the Kim Kardashian video referenced in the Court's Order on their websites and social media . . ." and

---

[2] Defendants had revised the caption soon after the video was posted. *See* R&R, Dkt. 152 at 9; Eum Decl., Dkt. 141 ¶ 16.

clarified that the device in the video is, in fact, Plaintiff's device. Reply, Dkt. 176 at 2–3. On August 11, 2020, the Court ordered Defendants, by no later than August 21, 2020, to come into compliance with the MPI, including by discontinuing "all usage of the Kardashian video(s) (unless Defendants can provide evidence that the referenced product was manufactured and sold by Defendants)." Order, Dkt. 180 at 3. Defendants have not disputed that the device being used is Plaintiff's Aquagold device, although they do note that the video features the product injected by the device and not the device itself. Resp., Dkt. 230 at 4–5.[3]

In its motion for sanctions, Plaintiff argues that Defendants continue to use an image from the Kardashian video to promote the Golden Cocktail Facial product[4] in violation of the MPI. *See* Motion, Dkt. 213 at 39–40, 52. The image about which Plaintiff complains appears in a post on Defendants' Instagram page. *See* Instagram Post, Dkt. 214-7 at 80. The post itself includes a photograph of a computer monitor displaying what appears to be part of Defendants' presentation at the Asia Pacific Anti-Aging Conference (APAAC). *Id.* The portion of the presentation displayed on the monitor includes a screenshot from the Kim Kardashian video. *Id.* As discussed above, the Court previously found that Defendants' use of the full video violated the MPI because the video caption used Plaintiff's mark without a disclaimer, the video was aimed at American consumers, and the video falsely implied that Defendants produced the device being used. Contempt Order, 2020 WL 1900502, at *9. Here, the screenshot does not include a caption, so that issue is not pertinent. With respect to the remaining concerns, Judge

---

[3]  Defendants persuasively argue that Plaintiff has no right to use the Kim Kardashian video. Resp., Dkt. 230 at 4–5; *See also* Eum Decl., Dkt. 231 ¶¶ 8–17; Exhibit 1–2, Eum Decl., Dkt. 231-1 at 1–25. Whether Plaintiff has the right *vel non* to use the video is of no moment; what is clear is that *Defendants'* use of the video violates both the MPI and a Court order that explicitly required them to cease using the video.

[4]  It appears that "Golden Cocktail Facial" is a product that can be injected under the skin using a device like the one produced by Plaintiff.

9

Lehrburger found that "there is nothing about [the] display of the single frame that is likely to cause confusion" and, therefore, the snapshot does not warrant coercive sanctions. R&R at 56–57. Upon *de novo* review, the Court disagrees. The screenshot is still likely to confuse consumers, who associate an American celebrity who likely receives treatment in the United States with Plaintiff's product.[5] Additionally, Judge Lehrburger found that the screenshot was less likely to cause confusion because "it is not readily evident from the snapshot that the woman, whose head is wrapped in a towel, is Kim Kardashian . . . ." R&R at 56. Although Judge Lehrburger and the undersigned may not be able to identify Kardashian in the photograph, members of the trade as well as clientele and prospective clientele of the parties' products are presumably more skilled at identifying the celebrity.[6] In short, the Court finds that Defendants' use of the screenshot violates the MPI.

But more important, the Court could not have been clearer in August 2020 when it stated: "This order requires Defendants: to discontinue all usage of the Kardashian video(s) . . ." Order, Dkt. 180 at 3. Although the Court recognizes that displaying a screenshot from a video is different than displaying the video itself, the Court finds that posting or in any way using a screenshot from the infringing video is still a "usage" of that video. Finding otherwise would allow Defendants to bypass the MPI by posting a series of screenshots from the video that convey the same messaging and imagery as the video itself. Although Defendants' use of the screenshot is not the most egregious violation of the MPI, it is still a violation. *Cf.* R&R at 59 (noting in a different context that although infringing content "is barely discernable," it continues

---

[5] *See* MPI, Dkt. 65 ¶ 1(D) (prohibiting Defendants from "engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product . . ."); *id.* ¶ 1(G) (prohibiting "any commercial advertising or promotion misrepresenting the nature, characteristics, qualities, or geographic origin of Plaintiff's or Defendant's goods or services").

[6] The Court infers that Defendants went to the trouble of taking and using a screenshot from the Kardashian video precisely because it features Kardashian.

10

to violate the MPI). No matter how small a violation, Defendants' use of the screenshot is representative of Defendants continuing attempts to play fast and loose with the requirements of the MPI. In short, the Court adds Defendants' use of the Kardashian screenshot to the list of ongoing violations of the MPI that warrant coercive sanctions.

Given the Court's findings with respect to the Kardashian screenshot and the other three ongoing violations of the MPI, the Court imposes the following coercive sanctions: (1) Defendants must remediate all continuing violations by no later than Friday, September 3, 2021; (2) if any of the specified violations continue after that date, Defendants must pay $3,000 each calendar day ("Daily Coercive Sanction") that any violation continues; every seven days the Daily Coercive Sanction will increase by $500.[7]

Any imposed coercive sanctions must be paid to the Clerk of Court and not to Plaintiff. The compensatory sanctions — the $267,862.89 to reimburse Plaintiff for reasonable attorneys' fees and costs associated with Defendants' contempt as well as the amount of ill-gotten gains to be determined upon a complete record — will compensate Plaintiff's "actual loss due to Defendants' failure to obey the court order." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2021 WL 3418475, at *17 (S.D.N.Y. Aug. 5, 2021) (internal citation omitted).

---

[7] Judge Lehrburger recommended "imposing coercive sanctions (1) requiring Defendants to remediate all continuing violations no later than seven days after issuance of a court order adopting this recommendation; and (2) if Defendants fail to so remediate, imposing sanctions of $2,500 for every day until Defendants come into full compliance." R&R, Dkt. 272 at 61. Given the Court's findings with respect to the Kardashian screenshot and Defendants' blatant disrespect for the Court's orders, the Court modifies the coercive sanctions in the manner described in text.

The Court notes that this Order reduces the amount of time Defendants have to avoid coercive sanctions from seven days after this Court's decision to three days. The Court has done so because Defendants have been on notice since July 16, 2021, the date on which the R&R was entered, that the display of Plaintiff's South Korean AQUAGOLD mark on package instructions shown on one of Defendants' Instagram pages; the failure to add the required disclaimers to Defendants' YouTube channel and videos; and the failure to remove a defamatory news video from Defendants' website were in violation of the MPI. Although this Court's determination that use of the Kardashian screenshot also violates the MPI may have come as a surprise to Defendants, the Court finds that, under all of the circumstances, three days is more than sufficient for Defendants to finally come into full compliance with the MPI so that it can avoid all coercive sanctions.

Plaintiff has not shown that Defendants' four continuing violations of the MPI have led to any additional loss beyond what is and what will be encompassed by the compensatory sanctions. Accordingly, the "sanction shall be payable to the Clerk of Court rather than to Plaintiff." *See id.* (collecting cases discussing when compensable sanctions should be paid to the Court and not to the opposing party).

IT IS FURTHER ORDERED that, for the reasons discussed above, the Court orders the following sanctions:

1. *Compensatory Sanctions*: Defendants must pay $265,248.00 in attorneys' fees and $2,614.89 in costs to Plaintiff as compensatory sanctions for Defendants' past violations of the MPI, including for the deletion of the @aquagoldubio Instagram account. Defendants must file proof of payment on the docket by no later than **Friday, September 10, 2021**. Failure to pay Plaintiff in a timely manner will result in additional sanctions. Additionally, the Court defers the determination of the amount of profits to be disgorged as additional compensatory sanctions until after the completion of all discovery in this matter.

2. *Discovery Sanctions*: Plaintiff's request that the Court impose sanctions for Defendants' violations of discovery orders and deadlines is denied without prejudice to a later application upon a more complete record.

3. *Coercive Sanctions*: Defendants have one last opportunity to cure the following four ongoing violations of the MPI: (1) the use of a screenshot from the Kim Kardashian video; (2) the display of Plaintiff's South Korean AQUAGOLD mark on package instructions shown on one of Defendants' Instagram pages; (3) the failure to add the required disclaimers to Defendants' YouTube channel and videos; and (4) the failure

to remove a defamatory news video from Defendants' website.  *See* R&R at 56–60. If Defendants do not cure those four violations by **5:00 p.m., EST, Friday, September 3, 2021**, they must pay the Clerk of Court $3,000 for each day that any of the specified violations continue ("Daily Coercive Sanction").  Every seven days, the Daily Coercive Sanction will increase by $500.  By no later than **Monday, September 6, 2021**, the parties must file a joint letter to Judge Lehrburger indicating their respective positions as to whether Defendants have ceased all violations of the MPI.

The Clerk of Court is respectfully directed to close the open motions at docket entries 213 and 216.

**SO ORDERED.**

Date:  August 30, 2021
New York, New York

_____
**VALERIE CAPRONI**
**United States District Judge**